**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com

**SHENAQ PC**
Amir Shenaq, Esq.*
3500 Lenox Road, Ste. 1500
Atlanta GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons, Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

*Pro hac vice* forthcoming

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Kerstine Bryan, individually, and on behalf of those similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>Del Monte Foods, Inc.,<br>,<br><br>                    Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiff Kerstine Bryan brings this action on behalf of herself and all others similarly situated against Defendant Del Monte Foods, Inc. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This case arises from Defendant's deceptive and misleading practices with respect to its marketing and sale of its food products (collectively, the "Product" or "Products").[1]

2.     Defendant manufactures, markets, and sells its Products throughout the United States including the States of Oregon and California.

3.     Despite the representations made on the Products' labels which lead reasonable consumers to believe that the Products are "natural," they are not.

4.     The brand has grown significantly, and this growth was not by accident. Rather, it developed from specifically targeting the "natural" market with intense focus.

5.     Defendant's marketing efforts stress the purported "natural" composition of their Products.

6.     Notably, the principal display panel of all of the Products states that the Products are "Naturals."

---

[1] At the time of this filing, the following products are included in this definition: Fruit Naturals Bartlett Pear Chunks, Fruit Naturals Peach Chunks, Fruit Naturals Mandarin Oranges, Fruit Naturals Mango Chunks, and Fruit Naturals Cherry Mixed Fruit. This definition is not exhaustive, and shall include all of Defendant's products that are similarly deceptively marketed.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP



7.     The word "Naturals" is a representation to a reasonable consumer that the Product contains only natural ingredients.

8.     This represents that the Product is "natural" to consumers.

9.     Reasonable consumers, including Plaintiff,  interpret "natural" to mean that the product does not include synthetic ingredients.

10.     Despite this representation, the Products are not natural because they include multiple synthetic ingredients.

CLASS ACTION COMPLAINT

11.    Specifically, the Products contain the following synthetic ingredients: Citric Acid, Sodium Benzoate, Potassium Sorbate, and Methylcellulose Gum.

12.    Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "natural" when purchasing the Products.

13.    Reasonable consumers purchased the Products believing, among other things, that they were accurately represented. Specifically, reasonable consumers believed that the Products contained accurate label information and representations. Reasonable consumers would not have purchased the Products if they had known about the misrepresentations or would have purchased them on different terms.

14.    Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent a Nationwide Class, a Multi-State Consumer Class, and an Oregon Class. Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from its unlawful and/or deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendant's unlawful conduct in the labeling and marketing of the Products.

15.    Defendant's conduct violated and continues to violate, *inter alia*, the consumer protection statutes of Oregon and California. Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

GOOD GUSTAFSON AUMAIS LLP

**JURISDICTION AND VENUE**

16.     This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the California consumer market and distributes the Products to many locations within the state, where the Products are purchased by thousands of consumers every day.

17.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed Plaintiff's class and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Classes (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

18.     Venue is proper in this District under 28 U.S.C. § 1391. Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District. Defendant's maintains its principal place of business in this District.

**DIVISIONAL ASSIGNMENT**

19.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in Contra Costa County where Defendant's headquarters is located, and this action should be assigned to the Oakland Division.

GOOD GUSTAFSON AUMAIS LLP

## **PARTIES**

20.     Plaintiff Kerstine Bryan is a citizen of Oregon who purchased the Products during the class period, as described herein. Plaintiff's purchases took place in California. In addition, the labeling on the package of the Products purchased by Plaintiff, including the "natural" representations, is typical of the advertising and labeling of the Products purchased by members of the Class. Plaintiff relied on the representation on the packaging that the Products were "natural."

a.  Within the Class Period, Plaintiff purchased, including but not limited to, the Mango Chunks and Peach chunks on multiple occasions. These purchases were made at retailers throughout Oregon. Most recently in January 2023, Plaintiff purchased the Mango Chunks and Peach Chunks from a Walmart store in Salem, Oregon.

21.     Defendant Del Monte Foods, Inc. is a Delaware corporation with its principal place of business in Walnut Creek, Contra Costa County, California.

a.  From its California headquarters, Defendant produces, markets, and distributes its consumer food products in retail stores throughout the United States.

22.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

23.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or transaction through its officers, directors,

1    employees, agents, and/or representatives while they were acting within the actual or

2    ostensible scope of their authority.

3                                    **FACTS**

4    **A.  Consumers Value Representations that a Product is Natural**

5        24.    Consumers have become increasingly concerned about the effects of

6    synthetic and chemical ingredients in food products.[2]

7        25.    Companies such as the Defendant have capitalized on consumers'

8    desires for purportedly "natural products."

9        26.    Indeed, consumers are willing to pay, and have paid, a premium for

10   products branded "natural" over products that contain synthetic ingredients.

11       27.    In 2015, sales of natural products grew 9.5% to $180 billion.[3] Reasonable

12   consumers, including Plaintiff and Class Members, value natural products for

13   important reasons, including the belief that they are safer and healthier than

14   alternative products that are not represented as natural.

15       28.    Further, consumers have become increasingly concerned about the

16   effects of synthetic ingredients in consumer products.[4]

GOOD GUSTAFSON AUMAIS LLP

---

[2] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017).

[3] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6 ; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www. investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025).

[4] Butler and Vossler, *supra* note 2.

– 6 –

GOOD GUSTAFSON AUMAIS LLP

29.     Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

30.     As a result, "natural" products are worth more than products that contain artificial ingredients, and consumers pay a premium for products labeled "natural" over products that contain synthetic ingredients.

B.  **Plaintiff and Other Reasonable Consumers Understand Natural to Mean that a Product Lacks Artificial Ingredients**

31.     Plaintiff and Class Members understand "natural" representations to mean that a product lacks synthetic ingredients.

32.     This interpretation is consistent with the understanding of a reasonable consumer.

33.     The test to determine if a company's "natural" representation is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term "natural" means, one can look to regulatory agency guidance.

34.     Federal agencies have warned companies that they must ensure that they can substantiate "natural" claims.

35.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed

into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.[5]

36.     The FTC has warned companies that the use of the term "natural" may be deceptive:[6]

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.

37.     Likewise, the Food and Drug Administration ("FDA") warns that any "natural" labeling on products must be "truthful and not misleading."[7]

38.     In April 2016, the FTC settled with four manufacturers and filed a complaint against a fifth company for representing that its products were "natural" when they contained synthetic ingredients. The manufacturers agreed to cease marketing the products in question as being "natural."[8]

39.     Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a

---

[5] U.S. Department of Agriculture, Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic, March 26, 2013, *available at* https://web.archive.org/web/20140818174458/http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5103308.

[6] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).

[7] U.S. Food and Drug Administration, Small Business & Homemade Cosmetics: Fact Sheet, *available at* http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7.

[8] *Four Companies Agree to Stop Falsely Promoting Their Personal-Care Products as "All Natural" or "100% Natural"; Fifth is Charged in Commission Complaint*, (April 2016), https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited Mar. 17, 2021).

GOOD GUSTAFSON AUMAIS LLP

reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients. For example, according to a consumer survey, "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[9]

40.     A reasonable consumer's understanding of the term "natural" comports with that of federal regulators and common meaning. That is, the reasonable consumer understands the representation that a product is "natural" to mean that it does not contain any synthetic ingredients.[10]

C. **Defendant Represents that the Products are Natural**

41.     Defendant capitalizes on consumers' preferences for natural products by making representations to consumers on its Products that they are natural.

42.     The front label of every Product states that the Product is " Fruit Naturals."

43.     The following image is an example of that representation being prominently made on one of the Products:

---

[9] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010), *available at* https://www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf (also accessible as Comment 58 at http://www.ftc.gov/policy/publiccomments/initiative-353).

[10] Butler and Vossler, *supra* note 2. "The vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives." *Id.*

GOOD GUSTAFSON AUMAIS LLP









44.     Based on the language that appears on the front of each product, Plaintiff reasonably believed that Products contained only natural ingredients.



45.     "Naturals" is a representation to a reasonable consumer that the Products contain only natural ingredients.

46.     Defendant represents on its Products' labels that the Products are "natural."

47.     Defendant also reinforces these representations throughout other forms of marketing including its website.

48.     For example, on its website, it emphasizes "naturally refreshing" and "Chilling in your grocer's produce section" while showing images of fresh fruit:



GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

D. **Defendant's Representations Are False, Misleading, and Deceptive**

49.     Despite representing that the Products are "natural," the Products contain multiple synthetic ingredients.

50.     Thus, Defendant's representations that the Products are "natural" is false, misleading, and deceptive because the Products contain ingredients that are, as set forth and described below, synthetic.[11]

    a. **Citric Acid** is recognized by the FDA and other federal agencies as an artificial substance.[12] Citric acid is added as a synthetic preservative, flavorant, and acidity regulator. It is commonly manufactured through solvent extraction or mycological fermentation of bacteria.[13] While the chemical's name has the word "citric" in it, citric acid is not extracted from fruit. Rather, it is industrially manufactured by fermenting genetically modified strains of the black mold fungus *Aspergillus niger*.[14]

---

[11] Other ingredients in the Products may also be artificial as well. Plaintiff's investigation is ongoing and will seek to amend the Complaint to specify other potential artificial ingredients in the future.

[12] *See* FDA Informal Warning Letter to the Hirzel Canning Company (August 29, 2001) ("the addition of calcium chloride and citric acid to these products preclude use of the term 'natural' to describe this product."); U.S. International Trade Commission, Synthetic Organic Chemical Index, USCTIC Pub. 2933, at 3-105 (Nov. 1995).

[13] 21 C.F.R. § 184.1033(a).

[14] *See, e.g.*, Belen Max, et al. *Biotechnological Production of Citric Acid*, BRAZILIAN JOURNAL OF MICROBIOLOGY, 41.4 Sao Paolo (Oct./Dec. 2010) and Sweis, Iliana E, and Bryan C Cressey. *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, TOXICOLOGY REPORTS, 5.808 ( Aug. 9 2018).

GOOD GUSTAFSON AUMAIS LLP

b. **Potassium Sorbate** is a synthetic preservative.[15] It is created by using potassium hydroxide (KOH) to neutralize sorbic acid (C6H802). The resulting potassium sorbate may be crystallized from aqueous ethanol. Studies have shown Potassium Sorbate to have genotoxic effects on humans and other mammals.[16] It causes chromosomal aberrations in cells, which can trigger the development of cancer.[17]

c. **Sodium Benzoate** is a synthetic preservative.[18] Sodium Benzoate is produced by the neutralization of benzoic acid with sodium hydroxide, or by adding benzoic acid to a hot concentrated solution of sodium carbonate until effervescence ceases. The solution is then evaporated, cooled and allowed to crystalize or evaporate to dryness, and then granulated. It does not occur naturally.[19] Sodium Benzoate has been shown to cause DNA damage and chromosomal aberrations.[20] When Sodium Benzoate combines with either Ascorbic Acid or Citric Acid (a combination of ingredients present in some of the Products), the two

---

[15] U.S. Dept. of Agriculture, CFNP TAP Review, *Potassium Sorbate*, https://www.ams.usda.gov/sites/default/files/media/P%20Sor%20technical%20advisory%20panel%20report.pdf and *see* FDA Warning Letter to Bagels Forever (dated 7/22/2011) (available at: http://wayback.archive-it.org/7993/20170112193358/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm265756.htm): "Your product is manufactured with infused wild dry blueberries that contain potassium sorbate, which is listed in 21 CFR 182.3640 as a chemical preservative; therefore, your product may not make the claims 'All Natural' and 'No Preservatives.'"

[16] Sevcan Mamur et al., Does Potassium Sorbate Induce Genotoxic or Mutagenic Effects in Lymphocytes?, TOXICOLOGY IN VITRO 790, 793 (2010).

[17] *Id.*

[18] 21 C.F.R. § 582.3733.

[19] 21 C.F.R. § 184.1733.

[20] N. Zengin et al., The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).

substances can react to produce benzene, which is a highly toxic carcinogen that causes leukemia.[21]

    d. **Methylcellulose Gum** is a synthetic laxative[22] and thickening agent[23] that does not occur naturally and is synthetically produced by heating cellulose with caustic solution (e.g. a solution of sodium hydroxide) and treating it with methyl chloride. Studies have shown that it can trigger inflammatory bowel disease and metabolic syndrome.[24]

51. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know that the Products contain unnatural, synthetic ingredients, by reading the ingredients label.

---

[21] U.S. Food and Drug Administration, *Questions and Answers on the Occurrence of Benzene in Soft Drinks and Other Beverages*, (2018), https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q4 (last visited Nov. 16, 2020); *See Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1238 (D. Kan. 2007): "[P]roducts from defendants which contained sodium benzoate and ascorbic acid, citric acid or erythoribic acid. The Food and Drug Administration ("FDA") has reported that these ingredients may interact to form benzene, a hazardous substance which the Environmental Protection Agency ("EPA") knows to potentially cause anemia, nervous systems disorders and immunosuppression in persons who are exposed..." *and* Robert Snyder, *Leukemia and Benzene*, International Journal of Environmental Research and Public Health vol. 9,8 (2012): 2875-93 *and* Lakshmi Narayanan Venu & Anoop Austin, *Study and Quantification of Preservative (E211) In Carbonated Soft Drink Samples*, International Organization of Scientific Research Journal of Applied Chemistry vol. 12,4 (2019): 17-23 ("Sodium benzoate reacts with citric acid or ascorbic acid to form benzene").

[22] McRorie JW Jr. *Evidence-Based Approach to Fiber Supplements and Clinically Meaningful Health Benefits, Part 2: What to Look for and How to Recommend an Effective Fiber Therapy*. NUTR TODAY. 2015;50(2):90-97. doi:10.1097/NT.0000000000000089.

[23] Center for Science in the Public Interest, *Carboxymethyl cellulose, sodium carboxymethyl cellulose*, NUTRITION ACTION (Feb. 6, 2022), https://www.cspinet.org/article/carboxymethyl-cellulose-cmc-cellulose-gum-sodium-carboxymethyl-cellulose-cmc.

[24] *Id.*

GOOD GUSTAFSON AUMAIS LLP

**GOOD GUSTAFSON AUMAIS LLP**

52.     Discovering that the ingredients are not natural and are actually synthetic requires an investigation beyond that of the skills of the average consumer. That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand – that these ingredients are synthetic.

53.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front-of-the-product claims, representations, and warranties that the Products are "natural."

54.     Defendant did not disclose that the above listed ingredients are synthetic ingredients anywhere on the Product. A reasonable consumer understands Defendant's "natural" claims to mean that the Products are "natural" and do not contain synthetic ingredients.

55.     Consumers rely on label representations and information in making purchasing decisions.

56.     The marketing of the Products as "natural" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that "natural" claims are material to consumers.

57.     Additionally, Defendant is aware that products containing synthetic ingredients have lower demand and exploit reasonable consumers by projecting that the Products are "natural" and free of synthetic, bad ingredients.

58.     Defendant's deceptive representations are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

59.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

60.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled the Plaintiff and the Class Members.

E.  **Defendant's Deceptive Conduct Caused Plaintiff's and Class Members' Injuries**

61.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled "natural" over comparable products not so labeled and marketed.

62.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations, Defendant injured the Plaintiff and the Class Members in that they:

a.  Paid a sum of money for Products that were not what Defendant represented;

b.  Paid a premium price for Products that were not what Defendant represented;

c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

63. Plaintiff and the Class Members paid for Products that were "natural" but received Products that were not "natural." The products Plaintiff and the Class Members received were worth less than the products for which they paid.

64. Based on Defendant's misleading and deceptive representations, Defendant were able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the misrepresentations.

65. Plaintiff and the Class Members paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

66. Defendant knew that consumers will pay more for a product marketed as "natural," and intended to deceive Plaintiff and putative Class Members by labeling and marketing the Products as purportedly natural products.

67. Plaintiff and Class Members paid for the Products over and above comparable products that did not purport to be "natural." Given that Plaintiff and Class Members paid for the Products based on Defendant's misrepresentations that they are "natural," Plaintiff and Class Members suffered an injury in the amount paid.

GOOD GUSTAFSON AUMAIS LLP

68.    Additionally, Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "natural." Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "natural," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

## CLASS DEFINITIONS AND ALLEGATIONS

69.    Plaintiff, pursuant to Federal Rule of Civil Procedure 23, brings this action on behalf of the following classes (collectively, the "Class," "Classes," and "Class Members"):

a.   Multi-State Consumer Class: All persons in the States of California, Florida, Illinois, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Oregon, and Washington who purchased the Products.[25]

b.   Oregon Class: All persons who purchased Defendant's Products within the State of Oregon and within the applicable statute of limitations period; and

---

[25] The States in the Multi-State Consumer Class are limited to those States with similar consumer protection laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 ILCS 505/1, et seq.); Maryland (Md. Com. Law §§ 13-301); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. 407.010, et seq.); New Jersey (N.J. Stat. § 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Pennsylvania (73 Pa. Stat. Ann. §§ 201-1 et seq.); Oregon (Or. Rev. Stat. §§ 646.605, et seq.); and Washington (Wash Rev. Code § 19.86.010, et seq.).

c.   Nationwide Class: All persons who purchased Defendant's Products within the United States and within the applicable statute of limitations period.

70.   Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

71.   The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, millions of units of the Products to Class Members.

72.   There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a.   whether Defendant misrepresented material facts concerning the Products on the label of every product;

b.   whether Defendant's conduct was unfair and/or deceptive;

c.   whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the Classes;

d.   whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

e.   whether Defendant breached express and implied warranties to Plaintiff and the Classes;

f.   whether Plaintiff and the classes have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

73.   Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the Classes, purchased Defendant's Products bearing the natural representations and Plaintiff sustained damages from Defendant's wrongful conduct.

74.   Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the classes.

75.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

76.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

77.     The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## COUNT I
### Violation of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, et seq.

78.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.     Plaintiff brings this Count individually and on behalf of the members of the Nationwide Class.

80.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

81.     Defendant violated the "unlawful" prong of the UCL by violating the False Advertising Law ("FAL"), as alleged herein.

82.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to

– 21 –

consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

83.     Defendant violated the "fraudulent" prong of the UCL by misrepresenting that the Products are "natural" when, in fact, they are made with synthetic ingredients.

84.     Plaintiff and the Class Members lost money or property as a result of Defendant's UCL violations because: because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with synthetic ingredients (b) they paid a substantial price premium compared to other food products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

85.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

86.     Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

**COUNT II**
**Violation of The False Advertising Law ("FAL"),**
**CAL. BUS. & PROF. CODE §§ 17500, et seq.**

87.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.     Plaintiff brings this Count individually and on behalf of the members of the Nationwide Class.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

89.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

90.     Defendant committed acts of false advertising, as defined by §§17500, *et seq.*, by misrepresenting that the Products are "natural" when they are not.

91.     Defendant knew or should have known through the exercise of reasonable care (i.e. pre-market testing) that its representations about the Products were untrue and misleading.

92.     Defendant's actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.

93.     Plaintiff and the Class Members lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with synthetic ingredients; (b) they paid a substantial price premium compared to other food products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

94.     Defendant profited from the sale of the falsely and deceptively advertised Products to unwary consumers.

95.     As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

96.     Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT III
## Violation of Oregon's Unlawful Trade Practices Act ("UTPA")

97.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.     Plaintiff brings this Count individually and on behalf of the members of the Oregon Class.

99.     Plaintiff and Defendant are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

100.    Plaintiff and Class Members purchased goods and services in "trade" and "commerce" as meant by O.R.S. § 646.605(6)(a).

101.    Defendant engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of the Product.

102.    The UTPA prohibits "unfair *or* deceptive acts conduct in trade or commerce ...." O.R.S. § 646.608(1) (emphasis added). Due to the conduct described herein, Defendant willfully, knowingly, and recklessly used and employed a method, act or practice declared unlawful under the UTPA:

GOOD GUSTAFSON AUMAIS LLP

a. Defendant violated O.R.S. § 646.608(1)(b) by causing the likelihood of confusion or of misunderstanding as to the source of goods.

b. Defendant violated O.R.S. § 646.608(1)(e) by representing that goods have characteristics, ingredients, quantities or qualities that the goods do not have.

c. Defendant violated O.R.S. § 646.608(1)(g) by representing that goods are of a particular standard, quality or grade when they are of another.

d. Defendant violated O.R.S. § 646.608(1)(i) by advertising goods with intent not to provide them as advertised.

103.   A product containing only natural ingredients is inherently worth more than the actual Product purchased by Plaintiff, which is a product containing synthetic ingredients.

104.   Defendant's violations were willful, knowing, and/or reckless as Defendant knew or should have known that the conduct complained of herein caused the likelihood of confusion or of misunderstanding about the Product.

105.   Defendant intended to confuse and mislead consumers about the Product's "natural" nature, and knew it could charge more for such a Product than one containing artificial ingredients.

106.   As a result of Defendant's willful, knowing, and/or reckless violations of the UTPA as described above, Plaintiff and the Class Members suffered an ascertainable loss of money or property.

107.   Plaintiff and the Class Members further seek an order declaring Defendant has violated UTPA.

108.    Plaintiff and the Class Members also seek equitable relief, an injunction, and attorneys' fees and costs pursuant to ORS 646.638(3).

109.    Plaintiff and the Class Members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $200 (whichever is greater), punitive damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

**COUNT IV**
**Unjust Enrichment**

110.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

111.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendant.

112.    At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Classes.

113.    Plaintiff and members of the Classes conferred upon Defendant nongratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

GOOD GUSTAFSON AUMAIS LLP

114.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

115.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

**COUNT V**
**Violation of State Consumer Protection Statutes**

116.    Plaintiff repeats and realleges each and every allegation above as if set forth herein.

117.    Plaintiff brings this Count individually and on behalf of the members of the Multi-State Consumer Class.

118.    The Consumer Protection Acts of the States in the Multi-State Consumer Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

119.    Defendant intended that Plaintiff and the other members of the Multi-State Consumer Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by its deceptive conduct.

120.   As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff, and other members of Multi-State Consumer Class, have sustained damages in an amount to be proven at trial.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

b.   For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

c.   For an order awarding, as appropriate, compensatory and monetary damages, statutory damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

d.   For an order requiring Defendant to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

e.   For prejudgment and postjudgment interest on all amounts awarded;

f.   For an order awarding punitive damages; and

For an order awarding attorneys' fees and expenses and costs of suit.

GOOD GUSTAFSON AUMAIS LLP

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all causes of action so triable.

Dated: February 2, 2023

**Good Gustafson Aumais LLP**

/s/ J. Ryan Gustafson
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
cta@ggallp.com

**Shenaq PC**
Amir Shenaq, Esq.*
3500 Lenox Road, Ste 1500
Atlanta, GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

**The Keeton Firm LLC**
Steffan T. Keeton, Esq.*
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

*Pro hac vice forthcoming*

*Counsel for Plaintiff and the Proposed Class*

GOOD GUSTAFSON AUMAIS LLP