IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERSTINE BRYAN,<br><br>Plaintiff,<br><br>v.<br><br>DEL MONTE FOODS, INC.,<br><br>Defendant. | Case No. 23-cv-00865-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; AFFORDING PLAINTIFF LEAVE TO AMEND**<br><br>Re: Dkt. No. 21 |

Before the Court is defendant Del Monte Foods, Inc.'s ("Del Monte") Motion, filed June 2, 2023, "to Dismiss Plaintiffs' Complaint." Plaintiff Kerstine Bryan ("Bryan") has filed opposition, to which Del Monte has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

Del Monte is a Delaware corporation with a principal place of business in California. (See Class Action Compl. ("CAC") ¶ 20, Dkt. No. 1.) Bryan, a "citizen of Oregon," alleges she purchased, "at retailers throughout Oregon," fruit cups manufactured by Del Monte, specifically, "Mango Chunks and Peach Chunks," and that she did so in reliance on an assertedly false and misleading statement made on their respective front labels. (See CAC ¶ 20.)[2]

Specifically, Bryan alleges that in purchasing the fruit cups, she saw and relied on

---

[1] By order filed July 14, 2023, the Court took the matter under submission.

[2] Although the CAC also states Bryan's purchases "took place in California" (see CAC ¶ 20), there is no dispute that said allegation constitutes a typographical error.

the phrase "fruit naturals," with a bolded emphasis on "naturals" (see CAC ¶¶ 6, 42), which she understood to mean the products "contained only natural ingredients" (see CAC ¶ 44), when, in fact, they "contain[ed] multiple synthetic ingredients," including citric acid, potassium sorbate, sodium benzoate, and methylcellulose gum (see CAC ¶¶ 49-50).  Bryan further alleges that other Del Monte products (hereinafter, together with Mango Chunks and Peach Chunks, the "Products") include the same "fruit naturals" phrase on their front labels, despite containing the same synthetic ingredients.  (See CAC ¶¶ 1 n.1, 42, 50.)

Based on said allegations, Bryan, on her own behalf and on behalf of three putative classes, asserts the following five claims for relief: (1) "Violation of California's Unfair Competition Law ('UCL'), Cal. Bus. & Prof. Code § 17200, et seq." (Count I);[3] (2) "Violation of The False Advertising Law ('FAL'), Cal. Bus. & Prof. Code § 17500, et seq." (Count II);[4] (3) "Violation of Oregon's Unlawful Trade Practices Act ('UTPA')" (Count III);[5] (4) "Unjust Enrichment" (Count IV);[6] and (5) "Violation of State Consumer Protection Statutes (Count V)."[7]

//

---

[3] Bryan asserts the UCL claim on her own behalf and on behalf of a "Nationwide Class" comprised of "[a]ll persons who purchased [Del Monte's] Products within the United States and within the applicable statute of limitations period."  (See CAC ¶¶ 69c, 79.)

[4] Bryan asserts the FAL claim on her own behalf and on behalf of the Nationwide Class.  (See CAC ¶ 88.)

[5] Bryan asserts the UTPA claim on her own behalf and on behalf of an "Oregon Class" comprised of "[a]ll persons who purchased [Del Monte's] Products within the State of Oregon and within the applicable statute of limitations period."  (See CAC ¶¶ 69b, 98.)

[6] Bryan asserts the Unjust Enrichment claim on her own behalf and on behalf of three classes, namely, the Nationwide Class, Oregon Class, and a "Multi-State Consumer Class" comprised of "[a]ll persons in the States of California, Florida, Illinois, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Oregon, and Washington who purchased the Products."  (See CAC ¶¶ 69a, 111.)

[7] Bryan asserts the Consumer Protection Statutes claim on her own behalf and on behalf of the Multi-State Consumer Class.  (See CAC ¶ 117.)

# DISCUSSION

By the instant motion, Del Monte seeks an order dismissing the above-titled action under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of Article III standing, and/or under Rule 12(b)(6) for failure to state a claim. The Court turns first to the question of standing.

## A. Article III Standing

### 1. Legal Standard

A district court has subject matter jurisdiction only where the plaintiff has "[s]tanding to sue" under Article III of the Constitution. See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). To satisfy Article III's standing requirements, (1) "the plaintiff must have suffered an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury must be "fairly traceable" to the challenged conduct of the defendant, and (3) "it must be likely . . . that the injury will be redressed by a favorable decision." See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation, citation, and alteration omitted). "The party invoking federal jurisdiction bears the burden of establishing" the elements of standing, see id. at 561, and must make such a showing separately for each form of relief requested, see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 185 (2000).

### 2. Injury in Fact / Causation

At the outset, Del Monte contends Bryan "pleads no facts establishing an economic injury that confers Article III standing." (See Def.'s Mot. to Dismiss Pl.'s Compl. ("Def.'s Mot.") at 21:4, Dkt. No. 21.) As set forth below, the Court disagrees.

The Ninth Circuit has "consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that [such plaintiff] paid more for a product than [he/she] otherwise would have due to a defendant's false representations about the product." See McGee v. S-L Snacks Nat'l, 982 F.3d 700, 706 (9th Cir. 2020). A plaintiff also can "plead an economic injury by alleging that [he/she] bargained for a product worth a given value but received a product worth less than that value." See id. at 705–06.

Here, Bryan alleges that she and the class members "paid for the Products based on [Del Monte]'s misrepresentations that they [were] 'natural'" (see CAC ¶ 67) and that they "purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products" (see CAC ¶ 65), specifically, "that the Products were made with synthetic ingredients" (see CAC ¶ 84).  In addition, Bryan alleges, "'natural' products are worth more than products that contain artificial ingredients" (see CAC ¶ 30), and that by misrepresenting the Products as natural, Del Monte was "able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the misrepresentations" (see CAC ¶ 64).

The Court finds Bryan's allegations are sufficient to establish an economic injury for purposes of Article III standing.  See, e.g., Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595 (9th Cir. 2012) (holding, where plaintiffs alleged they "paid more for the [product] than they otherwise would have paid, or bought it when they otherwise would not have done so, because [defendant] made deceptive claims," they "suffered an 'injury in fact'"); Maisel v. S.C. Johnson & Son, Inc., 2021 WL 1788397, at *3 (N.D. Cal. May 5, 2021) (holding "because [plaintiff] allege[d] she purchased the [defendant's] dishwasher tablets and would not have if she knew they were mislabeled, . . . she ha[d] Article III standing to bring th[e] case").[8]

---

[8] The cases on which Del Monte relies are readily distinguishable.  (See Def.'s Mot. at 21:21-22:11.)  First, Del Monte cites Naimi v. Starbucks Corp., 798 F. App'x 67 (9th Cir. 2019), in which the court stated that, "[u]nder New York law, a plaintiff's allegation that she would not have purchased a product but for a deceptive act, standing alone, is not a cognizable injury because it conflates the deceptive act with the injury," see id. at 70.  As observed by another judge in this district, however, "[t]he court [in Naimi] did not analyze the sufficiency of the allegation under either Ninth Circuit or California law."  See Sinatro v. Barilla Am., Inc., 2022 WL 10128276, at *10 (N.D. Cal. Oct. 17, 2022).  Second, Del Monte cites McGee, a case in which the plaintiff, unlike Bryan here, "d[id] not allege that [the defendant] made false representations" about the product at issue, see id. at 707 (noting "a key element of . . . overpayment cases—a defendant's misrepresentations about a product—[was] absent").

Similarly unpersuasive is Del Monte's argument, again citing Naimi (see Def.'s Mot. at 24:10-20), that Bryan's allegations are insufficient to establish causation for purposes of Article III standing.  See Maisel, 2021 WL 1788397, at *3 (noting "if plaintiffs state that they would not have purchased a product had there been proper disclosure of relevant facts, that is sufficient to plead causation" (internal quotation, citation, and

4

Accordingly, Bryan's claims are not subject to dismissal for failure to plead an injury in fact or causation.

### 3. Standing to Seek Injunctive Relief

Del Monte next contends Bryan "has not plead[ed] facts establishing any entitlement to injunctive relief." (See Def.'s Mot. at 22:18-19.)

To have standing to seek injunctive relief, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation and citation omitted). The "threatened injury must be certainly impending to constitute [Article III] injury in fact" and "allegations of possible future injury are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (emphasis in original) (internal quotation and citation omitted).

Here, Del Monte argues, Bryan lacks standing to pursue injunctive relief "because [Bryan] cannot be deceived by the allegedly misleading labeling again (as she *allegedly* was)." (See Def.'s Mot. at 23:13-14 (emphasis in original).)

In response, Bryan concedes, and the Court finds, "[Del Monte] is correct about the [CAC's] insufficient allegations of future harm to obtain injunctive relief." (See Pl.'s Opp'n to Def.'s Mot. to Dismiss Compl. ("Pl.'s Opp'n") at 17:12 n.4, Dkt. No. 24); see also Jackson v. Gen. Mills, Inc., 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020) (noting "where a plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward, an injunction would serve no meaningful purpose as to that plaintiff").

Accordingly, to the extent Bryan seeks injunctive relief, such claims are subject to dismissal for lack of standing.

### 4. Standing to Assert Claims Under Non-Oregon Consumer Protection Statutes (Counts I, II, and V)

Del Monte further contends Bryan does "not have standing to bring non-Oregon

---

alteration omitted)).

5

1  consumer protection law claims." (See Def.'s Mot. at 24:21-22.)

2  As noted, Bryan asserts, in Counts I and II, claims under California law, and
3  asserts, in Count V, in addition to a claim under Oregon law, claims under the respective
4  consumer protection laws of twelve states, specifically, "California (Cal. Bus. & Prof.
5  Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 ILCS 505/1, et
6  seq.); Maryland (Md. Com. Law § 13-301); Massachusetts (Mass. Gen. Laws Ch. 93A, et
7  seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. §
8  325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010, et seq.); New Jersey (N.J. Stat. §
9  56:8-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Pennsylvania (73 Pa.
10 Stat. Ann. § 201-1 et seq.); and Washington (Wash. Rev. Code § 19.86.010, et seq.)."
11 (See CAC ¶ 69a n.25.)

12 "Where a representative plaintiff is lacking for a particular state, all claims based
13 on *that* state's laws are subject to dismissal." Granfield v. NVIDIA Corp., 2012 WL
14 2847575, at *4 (N.D. Cal. July 11, 2012) (emphasis in original) (citation and alteration
15 omitted) (noting "[t]his rule is consistent with the holding of Mazza that 'each class
16 member's consumer protection claim should be governed by the consumer protection
17 laws of the jurisdiction in which the transaction took place'" (citing Mazza, 666 F.3d at
18 594)). Consistent therewith, "[d]istrict courts in our circuit have dismissed state law class
19 claims for lack of standing before the class certification stage where no named plaintiff
20 resides in or otherwise interacted with the state." See Van Mourik v. Big Heart Pet
21 Brands, Inc., 2018 WL 1116715, at *1 (N.D. Cal. Mar. 1, 2018) (collecting cases).

22 Here, Bryan is the only named plaintiff. She resides in Oregon and does not
23 allege she made any purchases outside of Oregon nor interacted with any of the above-
24 listed states, other than, as discussed later herein, California. See infra Section B.3.
25 Despite Bryan's argument that Del Monte "confuses a class certification issue as a
26 standing issue" (see Pl.'s Opp'n at 12:20), courts "have struck class allegations where it
27 is clear from the pleadings that class claims cannot be maintained," see Pardini v.
28 Unilever United States, Inc., 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (holding sole

6

named plaintiff who "ha[d] not alleged that she purchased [the product] outside of California . . . [did] not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint"); see also Jones v. Micron Tech. Inc., 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019) (holding named plaintiffs, who "alleged they [we]re residents of only five [states]" and "d[id] not allege they were injured or had any pertinent connection to the twenty other states invoked by the Complaint[,] . . . lack[ed] standing to bring causes of action based on the laws of states other than [the five states]").

Accordingly, to the extent Count V is brought under the laws of eleven states other than California and Oregon, such claim is subject to dismissal for lack of standing.

### 5. Standing to Seek Relief as to Products Not Purchased by Named Plaintiff

As set forth above, Article III standing requires a showing of an injury in fact that is traceable to the challenged conduct and redressable by a favorable ruling. See Lujan, 504 U.S. at 560-61.

Del Monte argues Bryan lacks Article III standing to assert any claims based on products she did not purchase, namely, "Fruit Naturals Bartlett Pear Chunks, Fruit Naturals Peach Chunks, Fruit Naturals Mandarin Oranges, Fruit Naturals Mango Chunks, and Fruit Naturals Cherry Mixed Fruit," as well as "products that are similarly deceptively marketed." (See CAC ¶ 1 n.1.)

Contrary to Del Monte's argument, however, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." See Brown v. Hain Celestial Grp., Inc., 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012); see also Ang v. Bimbo Bakeries USA, Inc., 2014 WL 1024182, at *6 (N.D. Cal. Mar. 13, 2014) (noting "judges in this District . . . look at the same factors—similarity in products, similarity in claims, similarities in injury to consumers—to determine which unpurchased products can be

included by plaintiffs in their class actions").

Here, as to "Fruit Naturals Bartlett Pear Chunks, Fruit Naturals Peach Chunks, Fruit Naturals Mandarin Oranges, Fruit Naturals Mango Chunks, and Fruit Naturals Cherry Mixed Fruit" (see CAC ¶ 1 n.1), Bryan's claims are based on "the same kind of food products," see Astiana v. Dreyer's Grand Ice Cream, Inc., 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012), as those she purchased, namely, fruit cups, "the same labels for all of the products," see id., namely, the front label containing the "fruit naturals" phrase, and an "identical" injury, namely, payment that otherwise would not have been made, see Ang, 2014 WL 1024182, at *8.

As to the "products that are similarly deceptively marketed" (see CAC ¶ 1 n.1), however, Bryan's "failure to identify these products in any meaningful way dooms [her] efforts to bring those products into this action," see Gitson v. Trader Joe's Co., 2013 WL 5513711, at *4 (N.D. Cal. Oct. 4, 2013) (dismissing claim where "plaintiffs ha[d] pleaded no facts regarding . . . what their labels state or even what kinds of products these categories include").

Accordingly, to the extent Bryan asserts claims based on the above-listed identified products she herself did not purchase, the Court finds Bryan has adequately demonstrated Article III standing. To the extent Bryan asserts claims based on any unidentified products, such claims are subject to dismissal for failure to demonstrate Article III standing.

**B. Failure to State a Claim**

**1. Legal Standard**

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## 2. State Consumer Protection Claims (Counts I, II, III, and V)

### a. Reasonable Consumer Standard

According to Del Monte, Bryan's claims under the UCL, FAL, and UTPA, and other state consumer protection statutes all "fail because [she] cannot allege that the Products' packaging would mislead a reasonable consumer." (See Def.'s Mot. at 14:11-12.)  As set forth below, the Court disagrees.

Each such claim is "governed by the reasonable consumer test," see Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation and citation omitted), under which a plaintiff must "show that members of the public are likely to be deceived" by the challenged representation, see id. (internal quotation and citation omitted).  The question of "[w]hether a business practice is deceptive" is "'usually . . . a question of fact not appropriate for decision' on a motion to dismiss." See Moran v. Edgewell Pers. Care, LLC, 2022 WL 3046906, at *2 (N.D. Cal. Aug. 2, 2022) (quoting Williams, 552 F.3d at 938).

Here, Del Monte does not argue, nor would such argument likely be persuasive, that a reasonable consumer would not understand the word "natural" to preclude the presence of synthetic ingredients.  See, e.g., Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC, 2021 WL 3524047, at *8 (N.D. Cal. Aug. 6, 2021) (noting "[n]umerous courts in the Ninth Circuit have found it plausible that a reasonable consumer could understand similar 'natural' statements, including '100% natural,' 'natural,' and 'naturally-sourced,' to mean that a product does not contain any non-natural ingredients") (collecting cases).  Rather, Del Monte, noting "the presence of a disclaimer or similar clarifying language may defeat a claim of deception" (see Def.'s Mot. at 15:18-19 (citing Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017)) (alteration omitted)), asserts "the front label specifically disclaims that all ingredients in the Products are natural by stating that the fruit is packed in light syrup, and the ingredients label discloses the artificial ingredients" (see id. at 16:16-18).

To the extent Del Monte may be arguing all syrups contain artificial ingredients, such argument is unavailing.  Indeed, according to one highly respected dictionary, the word "syrup" is more commonly used to denote a combination of natural ingredients.  See Oxford English Dictionary, https://www.oed.com/view/Entry/196652 (last visited July 25, 2023) (defining "syrup" as "[a] thick sweet liquid; *esp.* one consisting of a concentrated solution of sugar in water (or other medium, e.g. the juices of fruits)").[9]  Further, given the relative placement of the words "fruit naturals" with the phrase "in extra light syrup," a reasonable consumer, as Bryan points out, could interpret the labeling to mean that the syrup is free of synthetic ingredients.  Cf. Carrea v. Dreyer's Grand Ice Cream, Inc., 475 F. App'x 113, 115 (9th Cir. 2012) (holding "no reasonable consumer is likely to think that 'Original Vanilla' refers to a natural ingredient when that term is adjacent to the phrase, 'Artificially Flavored'").

Under such circumstances, the ingredient list's inclusion of synthetic ingredients

---

[9] There is no argument that sugar is not a natural ingredient.

1   does not support dismissal of Bryan's claims. "[R]easonable consumers are not
2   'expected to look beyond misleading representations on the front of the box to discover
3   the truth from the ingredient list in small print on the side of the box.'" See Cheslow v.
4   Ghirardelli Chocolate Co., 445 F. Supp. 3d 8, 19–20 (N.D. Cal. 2020) (quoting Williams,
5   552 F.3d at 939); see also Hall v. Diamond Foods, Inc, 2014 WL 3779012, at *4 (N.D.
6   Cal. July 31, 2014) (holding "[w]here . . . plaintiff allege[d] a defendant ha[d] falsely
7   labeled a product as 'natural,' . . . defendant c[ould not] rely on contrary information in the
8   ingredient list").
9        Accordingly, the claims alleging violation of state consumer protection laws are not
10  subject to dismissal on grounds of failure to plead facts sufficient to meet the reasonable
11  consumer test.

     **b.  Rule 9(b)**

13       Del Monte next argues the above-listed four claims fail to meet the heightened
14  pleading requirements of Rule 9(b). Bryan does not dispute that those claims are subject
15  to the heigted pleading standards of Rule 9(b). (See Pl.'s Opp'n at 16:18-17:8.)
16       Rule 9(b) requires that "a party must state with particularity the circumstances
17  constituting fraud or mistake." See Fed. R. Civ. P. 9(b). "Allegations of fraud must 'be
18  specific enough to give defendants notice of the particular misconduct so that they can
19  defend against the charge and not just deny that they have done anything wrong.'" See
20  Elgindy v. AGA Serv. Co., 2021 WL 1176535, at *4 (N.D. Cal. Mar. 29, 2021) (quoting
21  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)). Consequently,
22  [a]verments of fraud must be accompanied by the who, what, when, where, and how of
23  the misconduct charged." See Vess, 317 F.3d at 1106.
24       Here, Bryan alleges Del Monte manufactures and markets the challenged
25  Products. She also identifies which of the challenged Products she purchased, namely,
26  Mango Chunks and Peach Chunks. She further alleges she made these purchases
27  "[w]ithin the Class Period" and "[m]ost recently in January 2023, . . . from a Walmart store
28  in Salem, Oregon." (See CAC ¶ 20a.) In the CAC, Bryan provides images of the

1  Products that show the front label, including the specific statement she challenges, "fruit
2  naturals." (See CAC ¶ 43.)  Moreover, she alleges she relied on that statement in making
3  her purchases and that had she known the Products were not natural, she would not
4  have purchased them.  Numerous courts have found similar allegations sufficient to
5  satisfy Rule 9(b).  See, e.g., Von Koenig v. Snapple Beverage Corp., 713 F. Supp. 2d
6  1066, 1077 (E.D. Cal. 2010) (finding plaintiffs satisfied Rule 9(b) where they "alleged that
7  between March 4, 2005 and March 4, 2009, defendant used terms such as 'All Natural'
8  and other similar terms in labeling its drink products[,] . . . submitted examples of the
9  labels[,] . . . allege[d] that this labeling deceived consumers because the drink products
10 contained HFCS, which they assert[ed] is not a natural product," and "further allege[d]
11 that if they had not been deceived by the labels on the products, they would not have
12 purchased defendant's product, but would have purchased alternative drink products")
13 (collecting cases); see also, e.g., Brown v. Van's Int'l Foods, Inc., 622 F. Supp. 3d 817,
14 829 (N.D. Cal. 2022); Moore, 2021 WL 3524047, at *7; Elgindy, 2021 WL 1176535, at
15 *12; Ehret v. Uber Techs., Inc., 68 F. Supp. 3d 1121, 1128-29 (N.D. Cal. 2014).
16      Del Monte argues Bryan nonetheless fails to satisfy Rule 9(b)'s requirements, in
17 that, according to Del Monte, she "only offers cursory allegations that [Del Monte's]
18 misrepresentations were willful and knowing, but offers no specific allegations supporting
19 those legal conclusions."  (See Def.'s Mot. at 20-11-13.)  Under Rule 9(b), however,
20 "intent, knowledge, and other conditions of a person's mind may be alleged generally."
21 See Fed. R. Civ. P. 9(b).  Moreover, Bryan has alleged facts in support of that allegation.
22 In particular, Bryan alleges that Del Monte, while indisputably knowing the Products
23 contain artificial ingredients, engaged in "marketing efforts stress[ing] the purported
24 'natural' composition of [its] Products" (see CAC ¶ 5) by stating "'natural' in a prominent
25 location on the labels of all of the Products" (see CAC ¶ 56) and by "reinforc[ing] these
26 representations throughout other forms of marketing including its website" (see CAC
27 ¶ 47).  Further, the CAC includes citations to a number of regulatory guidelines, rules,
28 and publications defining which substances are properly classified as "natural" (see CAC

12

¶ 35) and/or "warn[ing] companies that the use of the term "natural" may be deceptive" (see CAC ¶¶ 36, 37), and, in addition, cites to a consumer survey stating "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients" (see CAC ¶ 39).  Such allegations "are 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong,'" see Ehret, 68 F. Supp. 3d at 1129 (quoting Bly–Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)), and taken together, suffice to support an inference that Del Monte's misrepresentations were willful and knowing.

To the extent Bryan challenges products that she does not identify (see CAC ¶ 1 n.1), however, the Court agrees with Del Monte that her allegations as to those products are not specific enough to give defendants adequate notice of the fraud charged.

Accordingly, to the extent Bryan challenges identified products, the claims alleging violation of state consumer protection laws are not subject to dismissal under Rule 9(b).

### 3.  UCL and FAL Claims (Counts I, II, and V)

Del Monte argues Bryan fails to state a claim under the UCL or FAL for the asserted reason that she "has not plausibly alleged any purchase that occurred in California."  (See Def.'s Mot. at 17:11.)  In particular, as Del Monte points out, Bryan alleges she is an Oregon resident who purchased the Products in Oregon.  (See id. at 17:11-13 (citing CAC ¶ 20).)

"The UCL makes actionable any 'unlawful, unfair or fraudulent business act or practice.'"  Harris v. LSP Prod. Grp., Inc., 2021 WL 2682045, at *7 (E.D. Cal. June 30, 2021) (quoting Cal. Bus. & Prof. Code § 17200).  "The FAL makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'"  Id. (quoting Cal. Bus. & Prof. Code § 17500).

"In general, there is a strong presumption against the extraterritorial application of

California law." Wisdom v. Easton Diamond Sports, LLC, 2018 WL 6264994, at *4 (C.D. Cal. Oct. 9, 2018) (citing Sullivan v. Oracle Corp., 51 Cal. 4th 1191, 1207-08 (2011)); see also Wilson v. Frito-Lay N. Am., Inc., 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013) (noting "the Supreme Court of California has clarified that state statutes like the UCL [and] FAL . . . presumptively do not apply to occurrences outside California"). Nevertheless, "state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California." See Norwest Mortg., Inc. v. Superior Ct., 72 Cal. App. 4th 214, 224–25 (1999). In that regard, "[t]he critical issues are whether the injury occurred in California and whether the conduct of [the defendant] occurred in California." See Tidenberg v. Bidz.com, Inc., 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009). "If neither of these questions can be answered in the affirmative, then [the] [p]laintiff will be unable to avail herself of these laws." See id.

Here, Bryan alleges that Del Monte, "[f]rom its California headquarters, . . . produces, markets, and distributes its consumer food products in retail stores throughout the United States" (see CAC ¶ 21), and that Del Monte violated both the UCL and FAL "by misrepresenting that the Products are 'natural'" (see CAC ¶¶ 83, 90).

Del Monte argues "[t]hese allegations are insufficient," in that Bryan "fails to plausibly allege facts demonstrating that the 'new look for fruit naturals' labeling decision was made in California." (See Def.'s Reply in Supp. of Mot. to Dismiss Compl. at 5:1-2, Dkt. No. 25.) The cases Del Monte cites, however, are distinguishable on their facts, in that the defendants therein did not, unlike Del Monte, have their principal place of business in California, see Wilson, 961 F. Supp. 2d at 1148 (noting "[d]efendant [wa]s located in Texas"); see Six Dimensions, Inc. v. Perficient, Inc., 969 F.3d 219, 230 (5th Cir. 2020) (noting "[n]o party in the case . . . reside[d] in California"); see Harris, 2021 WL 2682045, at *14 (noting "[p]laintiff concede[d] the non-residents in th[e] case cannot assert California law-based claims");[10] Jackson v. Gen. Mills, Inc., 2019 WL 4599845, at

---

[10] Although not stated in the order, the operative complaint in Harris alleged the "[d]efendant] [wa]s a Nevada corporation." (See First Am. Class Action Compl. ¶ 13,

14

1  *3 (S.D. Cal. Sept. 23, 2019) (noting "[defendant] [wa]s a Delaware corporation with its
2  principal place of business in . . . Minnesota").
3  Where a defendant is located in California, and a non-resident plaintiff's claim is
4  "based on alleged misrepresentations that were disseminated from California," courts
5  have allowed the application of California law.  See Ehret, 68 F. Supp. 3d at 1130-31
6  (collecting cases) (noting "the UCL's focus is 'on the defendant's conduct, rather than the
7  plaintiff's damages, in service of the statute's larger purpose of protecting the general
8  public against unscrupulous business practices'").  Moreover, courts have found
9  allegations like Bryan's sufficient to plead claims under both the UCL and FAL.  See, e.g.,
10 In re Mattel, Inc., 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) (finding non-California
11 plaintiffs could bring UCL claim where they "complain[ed] of misrepresentations made in
12 reports, company statements, and advertising that [we]re reasonably likely to have come
13 from or been approved by Mattel corporate headquarters in California"); TRC & Assocs.
14 v. NuScience Corp., 2013 WL 6073004, at *5 (C.D. Cal. Nov. 18, 2013) (finding non-
15 California plaintiff could bring UCL and FAL claims where "Complaint [wa]s not based
16 solely on a commercial transaction outside of California, but [wa]s instead based on
17 material misrepresentations originating in California . . . , traveling through Florida, and
18 ending up in Ohio").
19 Accordingly, the UCL and FAL claims are not subject to dismissal for failure to
20 allege a purchase in California.
21      **4.  UTPA Claim (Count III)**
22 Del Monte argues Bryan fails to state a UTPA claim, for the asserted reason that
23 the CAC "is devoid of any factual allegations demonstrating that Del Monte acted
24 willfully."  (See Def.'s Mot. at 18:8-9.)
25 "The UTPA allows a private right of action for persons who have suffered an

---

Harris v. LSP Prod. Grp., Inc., 2021 WL 2682045 (E.D. Cal. June 30, 2021) (Dkt. No. 24).)

15

'ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608.'" Colquitt v. Manufacturers & Traders Tr. Co., 144 F. Supp. 3d 1219, 1231 (D. Or. 2015) (quoting Or. Rev. Stat. § 646.638(1)).  To state a claim under the UTPA, a plaintiff must allege: "(1) a violation of § 646.608(1), (2) causation, (3) damages, and (4) willfulness by [d]efendant."  See id.  "A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation."  See Or. Rev. Stat. § 646.605(10).

Here, Bryan alleges, Del Monte violated four separate subsections of Or. Rev. Stat. § 646.608(1), specifically, § 646.608(1)(b), "by causing the likelihood of confusion or of misunderstanding as to the source of goods," § 646.608(1)(e), "by representing that goods have characteristics, ingredients, quantities or qualities that the goods do not have," § 646.608(1)(g), "by representing that goods are of a particular standard, quality or grade when they are of another," and § 646.608(1)(i), "by advertising goods with intent not to provide them as advertised."  (See CAC ¶ 102.)

As set forth earlier herein, Bryan has alleged facts sufficient to show Del Monte knew it was misrepresenting its Products as natural.  Cf. Silva v. Unique Beverage Co., LLC, 2017 WL 2642286, at *9 (D. Or. June 15, 2017) (dismissing UTPA claim where plaintiff "assert[ed] in conclusory fashion that [d]efendant willfully, recklessly, knowingly, and intentionally violated O.R.S. § 646.608(1)(b), (e), and (g)"); Colquitt, 144 F. Supp. 3d at 1231 (dismissing UTPA claim where "[p]laintiff d[id] not specifically plead willfulness by [d]efendant").

Accordingly, Bryan's UTPA claim is not subject to dismissal for failure to allege willfulness.

### 5. Unjust Enrichment Claim (Count IV)

Del Monte argues Bryan's Unjust Enrichment claim fails, for the asserted reason that "California does not recognize a separate cause of action for unjust enrichment." (See Def.'s Mot. at 18:23.)

16

Although Del Monte is correct that "unjust enrichment" itself is "not a cause of action," see McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004) (noting "[u]njust enrichment" is a "general principle, underlying various legal doctrines and remedies") (internal quotation and citation omitted), the Ninth Circuit has recognized that "when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution[,]" see Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation and citation omitted).  In the instant case, the Court will construe Bryan's Unjust Enrichment claim as a standalone equitable claim, but nonetheless finds the claim subject to dismissal, given Bryan's failure to plausibly allege, even in the alternative, that she lacks an adequate remedy at law.  See Sonner v. Premier Nutrition Corp., 971 F.3d 834, 843-44 (9th Cir. 2020) (holding "[plaintiff] must establish that she lacks an adequate remedy at law before securing equitable restitution"); see also In re Intel Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig., 2021 WL 1198299, at *11 (D. Or. Mar. 29, 2021) (dismissing unjust enrichment claim pled "in the alternative" where "[p]laintiffs ha[d] not alleged, even in the alternative, that they do not have adequate legal remedies").

Accordingly, Bryan's Unjust Enrichment claim is subject to dismissal.

## CONCLUSION

For the reasons stated above, Del Monte's motion to dismiss is hereby GRANTED in part and DENIED in part as follows:

1. To the extent Bryan seeks injunctive relief, the motion is GRANTED;
2. To the extent Bryan asserts in Count V claims under the laws of states other than California or Oregon, the motion is GRANTED;
3. To the extent Bryan asserts claims based on any unidentified product, the motion is GRANTED;
4. To the extent Bryan asserts a claim for Unjust Enrichment, the motion is GRANTED;
5. In all other respects, the motion is DENIED.

Case 3:23-cv-00865-MMC   Document 28   Filed 07/25/23   Page 18 of 18

As Del Monte has not shown leave to amend necessarily would, in all respects, be futile, Bryan's request for such leave is hereby GRANTED. If Bryan wishes to file a First Amended Complaint to cure the above-noted deficiencies, she shall do so no later than August 25, 2023. In the event Bryan does not file a First Amended Complaint by said deadline, the above-titled action shall proceed on the remaining claims in the CAC.

**IT IS SO ORDERED.**

Dated: July 25, 2023

MAXINE M. CHESNEY
United States District Judge